The judgment should be reversed for the reasons stated by the chief judge. I am not able, however, to assent to his views in regard to the power of the common council over the subject embraced in the resolution out of which the present controversy has arisen. I am confidently of opinion that the municipal government of New-York may construct, or by mere license authorize others to construct, an iron track in Broadway, adapted to vehicles of the kind used upon railroads, and that licenses may be granted to the owners of such vehicles, as other carriages are now licensed. Without going at large into the discussion my reasons are briefly as follows: *Page 530 
As I have defined this power, it cannot be objected to its exercise that it grants a franchise or monopoly. It is true that railroads are usually built by private corporations, organized under special charters or general laws, and the right so to build and to use them exclusively becomes a corporate franchise. A road thus constructed becomes the property of the corporation which builds it, and all others are excluded from its use. But it by no means follows that a railroad track may not exist in a public highway in a city, open to the public use as a street improvement, under such regulations as the municipal government charged with the superintendence and control of streets may see fit to prescribe. The idea of a corporate franchise, or of a monopoly existing in favor of individuals or associations of individuals, has no necessary connection with a railroad. Railroads are physical improvements, and they may or may not possess the characteristics of a monopoly or franchise according to the conditions under which they are built and used. If they simply constitute a feature of the public highway and are open to the public use, then it is extremely plain that they are not liable to objections of this character.
The inquiry then next occurs, is there an absolute incompatibility between a highway and a railroad track laid upon it for the public use. This is not a question whether the track of a private corporation or of an association of persons can, under municipal or legislative authority, be rightfully laid in a public street without compensation to the owners of the soil, where that is owned by individuals. The course of judicial decision is certainly in favor of that right, upon the ground substantially that the public easement or highway is not destroyed or obstructed, but only used according to a new and improved mode, although the iron track is not owned by the public, and the public can only use it by riding or conveying their property in the cars of those who are its owners. But this I repeat is not the question. Can a highway and a railroad track coexist and *Page 531 
constitute one public easement, where no person or corporation can claim an exclusive right to use the track, and where all may use it under such regulations and licenses as the municipal government may provide? Of this I do not entertain any doubt.
But if we were disposed to doubt upon this question, or even to deny the conclusion stated, still the inquiry is not one upon which the law pronounces a judgment until the facts are ascertained, and to ascertain them we have no power. If a municipal corporation, in the exercise of its authority over streets, determines that iron rails and their use by the licensed portion of the public are a legitimate street improvement, I am not aware of any power in us to determine otherwise. We are in possession of no peculiar knowledge which enables us to declare that a city government, chartered with full authority to alter, regulate and improve its thoroughfares, violates its trust or transcends its powers in coming to such a determination, and passing proper ordinances to carry it into effect. For one, I do not know, and I cannot know judicially, that the street known as Broadway, in New-York, will be obstructed, or its usefulness on the whole impaired, by a particular kind of carriage drawn by horses upon an iron rail laid down for that purpose. This use of the street may have both its inconveniences and its advantages. It is not for us to say which will predominate.
Whether the proposed railway will be a nuisance is a mere question of fact, and as such it has been found in the negative on the trial in the court below, after the examination of a large number of witnesses. If it had been found the other way, then it might have been the duty of the court of original jurisdiction to interpose by injunction, and arrest the evil on that special ground, and it might be our duty to affirm the decision. But we have nothing to do with the comparative advantages and disadvantages merely of the proposed change in the street. Those were considerations peculiarly *Page 532 
addressed to the knowledge and judgment of the local government, charged with the care of all the streets in the city; and I should regard it as a usurpation by courts of power which does not belong to them, if they undertake to control the municipal authority in this respect. Courts are certainly not wiser on this subject than the common council of New-York, and unfortunately for their right to interfere, the supreme law making power of the state has vested in the council, and not in them, the power to regulate and control the streets of the city.
Such are my views upon the general question. In regard to the particular resolution of the common council authorizing Jacob Sharp and his associates to construct a railroad in Broadway, I have had some doubts whether it could not be sustained as a mere license revocable at pleasure, and imposing no obligations upon the city government; but my conclusion is that this cannot be done. The resolution, in its first clauses, is a simple authority to Sharp and others to construct the road in the manner specified, but these clauses are so connected with an entire scheme that the whole must stand or fall together. As the consideration for constructing the road, the ordinance clearly contemplates that it is to become the private property of the associates. They alone will be entitled to place their cars upon it, and within a maximum limit they can charge what they please for the carriage of passengers. These rights are in effect granted in perpetuity, because the only provision for their termination is in case the associates, after ten years, shall decline to pay such license fees "as the corporation, with the permission of the legislature, shall prescribe." In that event, the road, with its equipments, is to be surrendered at a fair and just valuation. Taking, therefore, the whole ordinance together and giving effect to it according to its terms and intention, it is no less than an abrogation by the common council of their powers and duties over and concerning the public streets, and a surrender of a considerable portion of those *Page 533 
powers and duties into the hands of private individuals or of a private corporation. This the corporation of New-York cannot do. Time and experience may, for aught we know, give a very unfavorable solution to the question whether this railroad or any railroad in Broadway can be beneficial to the public, but the hands of the city government will be tied by the contract into which it has entered, and future change and improvement may be prevented by this voluntary surrender of its own powers. On this ground, and without looking at the question in other and more special aspects, I am satisfied that the ordinance is void and that no effect can or should be given to any of its provisions.